UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 96-10252-RWZ

JOHN BARTOLOMEO

v.

UNITED STATES OF AMERICA

## MEMORANDUM OF DECISION

June 12, 2018

ZOBEL, S.D.J.

On May 21, 1998, petitioner — then a member of the Hells Angels Motorcycle Club — pleaded guilty to twelve counts of a superseding indictment charging him with possession with intent to distribute, and conspiracy to distribute, cocaine and methamphetamines. In conjunction with a plea agreement, the parties filed a joint motion for upward departure pursuant to United States Sentencing Guideline § 4A1.3(e) in which petitioner agreed to accept a 35-year term of imprisonment. In exchange, state and federal authorities agreed not to charge him with the beating of one rival gang member and the killing of another. In calculating the applicable guideline range, the sentencing judge found petitioner to be a career offender. He then allowed the joint motion for upward departure, and imposed its recommended 35-year term of imprisonment.

Petitioner now moves for resentencing because his predicate offenses no longer trigger career offender enhancements after the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) ("<u>Johnson II</u>").  Specifically, he argues that he was willing to accept the upward departure only because he believed himself already exposed to high sentencing guidelines as a career offender; absent that status, he contends, the departure would no longer have represented a good deal.  The government, on the other hand, insists that petitioner's sentence was entirely based on the joint motion for upward departure, which never contemplated career offender status.  Accordingly, it avers, petitioner is not entitled to resentencing under <u>Johnson II</u>.  For the reasons that follow, petitioner's motion is denied.

## I. Factual Background

I examine several sources in an effort to better understand the basis for petitioner's sentence: (1) the presentence report ("PSR") prepared by the Probation Office; (2) the plea agreement; (3) the joint motion for upward departure; and (4) the transcript of the combined change of plea and sentencing hearing.

### A. Presentence Report

Probation prepared a pre-plea PSR, dated April 23, 1998, to aid the court in sentencing.  A May 13, 1998 addendum indicated that both parties had reviewed the report and made no objections.  As of the date of the PSR's preparation, both parties had informed probation of petitioner's intent to plead guilty on all counts, ¶ 205, but no plea agreement had yet been signed.  ¶ 271.

#### 1. Uncharged Criminal Conduct

Petitioner admitted responsibility for two violent acts against rival gang members: the beating of Girard Giorgio on July 1, 1995, and the killing of William Michaels on July 29, 1995. In the first incident, petitioner and other Hells Angels members chased Giorgio – a member of the rival Devil's Disciples Motorcycle Club – down the highway as he rode his motorcycle. Having caught up with him, petitioner and others beat Giorgio badly, stripped him of his "colors"—clothing attesting to his gang affiliation—and hung the clothing upside down as a "trophy" in the Hells Angels clubhouse.

In the second incident, petitioner accelerated the car he was driving into William Michaels, a Devil's Disciples member riding his motorcycle at the time. The collision lodged Michaels's motorcycle in the grill of petitioner's car, rendering it inoperable. Michaels died as a result of the collision. Petitioner fled the scene and hid in the woods until nightfall; he then traveled to New York, where he stayed for several weeks.

### 2. Guidelines Calculations for Charged Offense Conduct

Probation calculated petitioner's base offense level at 32 based on a drug quantity equivalent to between 1,000 and 3,000 kilograms of marijuana. United States Sentencing Guidelines ("USSG") § 2D1.1 (1995). PSR ¶ 209. A three-level increase was applied to reflect petitioner's managerial role in the offense. USSG § 3B1.1(b). PSR ¶ 211. Finally, probation applied a career offender enhancement because petitioner had two prior convictions of either a crime of violence or an applicable controlled substance violation. The corresponding offense level was 37. USSG § 4B1.1. PSR ¶¶ 217-18.

Moving to petitioner's criminal history category, probation calculated that his criminal history score alone would yield a category of III, but that his career offender

designation directed an ultimate category of VI. USSG § 4B1.1. PSR ¶ 228. The predicate convictions for the career offender classification are not entirely clear. The PSR refers to paragraphs 229 and 230, but those paragraphs detail the uncharged killing of Michaels. The government attributes this reference to "a clerical error," Docket # 542 at 3, n.2, and the parties agree that the likelier predicates are "presumably" petitioner's convictions for assault and battery and assault and battery on a police officer. Docket # 540 at 18; Docket # 542, at 2-3. Those incidents occurred on December 27, 1993, and June 10, 1995. PSR ¶¶ 223-24.

Anticipating a three-level reduction for acceptance of responsibility at the time of plea, probation calculated a guideline sentencing range ("GSR") of 262 to 327 months' imprisonment based on total offense level 34 and criminal history category VI. Probation further noted, without so recommending, that the uncharged conduct involving Giorgio and Michaels could serve as the basis for an upward departure pursuant to USSG § 4A1.3(e), appropriately applied when a defendant's criminal history category does not adequately reflect the seriousness of past criminal conduct.[1] ¶¶ 288-290.

## B.  The Plea Agreement

The plea agreement, dated May 18, 1998, makes no mention of a career offender designation. Rather, it identifies petitioner's base offense level as 32, citing USSG § 2D1.1(a)(3) (setting offense level by drug quantity). The agreement further

---

[1] Specifically, USSG § 4A1.3(e) provides: "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning . . . (e) prior similar adult criminal conduct not resulting in a criminal conviction."

4

indicates a three-level increase for managerial role and three-level decrease for acceptance of responsibility, for a total offense level of 32. Critically, the parties reached no agreement as to petitioner's criminal history category. In any event, the agreement did not posit a GSR. Instead, the offense level and criminal history sections are followed by the below provisions:

> **(e) Upward Departure**
> As set forth in the joint motion for upward departure attached to this agreement, the parties agree that the undisputed facts contained in the Defendant's Presentence Report concerning the Defendant's participation in the assault and battery of Girard Giorgio on July 1, 1995 and the Defendant's responsibility for the death of William Michaels on July 29, 1995 warrant an upward departure pursuant to § 4A1.3(e) of the Sentencing Guidelines.
> **4. Sentence Recommendation**
> The parties agree to recommend the following sentence:
> > **(a) Incarceration**
> > The parties will make a joint recommendation to the Court at the Defendant's sentencing hearing that the Court depart upwards from the guideline range otherwise applicable to the Defendant and impose a sentence of 35 years' imprisonment.

Docket # 540-1, at 6. The agreement further provides:

> In the event that the Court allows the parties' Joint Motion For An Upward Departure and sentences the Defendant to a 35-year term of imprisonment, the U.S. Attorney will not charge the Defendant with the violation of any federal criminal law committed by the Defendant with respect to events occurring on July 1, 1995 and July 29, 1995. Similarly, in the event that the Court allows the parties' Joint Motion For An Upward Departure and sentences the Defendant to a 35-year term of imprisonment, the District Attorney will not charge the Defendant with the violation of any state law committed by the Defendant with respect to events occurring on July 29, 1995.

Id. at 11-12.

Finally, the agreement explicitly preserves petitioner's right "to petition the Court, pursuant to 28 U.S.C. § 2255, at any time for application of any future decision, ruling, change in law or change in the Sentencing Guidelines, which may result in a reduction

5

in the total time of the Defendant's incarceration." Id. at 11. This stands in contrast to a draft agreement dated March 25, 1998, which had waived without qualification petitioner's right "to bring any collateral attack against his conviction or sentence, including but not limited to, any collateral challenge pursuant to 28 U.S.C. § 2255." Id. at 2.

### C. Joint Motion for Upward Departure

The joint motion for upward departure, made pursuant to USSG § 4A1.3, incorporates petitioner's acknowledgement of the undisputed facts recited in the PSR concerning the beating of Giorgio and killing of Michaels. The motion quotes the guideline at length before concluding that section 4A1.3 "also recognizes that there may be occasions where an upward departure beyond the range provided for by a Criminal History Category of VI is appropriate. The parties are in agreement that the undisputed facts in this case represent such an occasion." Docket # 542-2, at 2-3 (citing United States v. Brewster, 127 F.3d 22, 27 (1st Cir. 1997) ("[i]n an appropriate case, a criminal history departure can be based upon prior dissimilar conduct that was neither charged nor the subject of a conviction")).

### D. Joint Rule 11 and Sentencing

At the joint hearing on change of plea and sentencing, the judge reasoned that "despite the joint recommendation for an upward departure, before we go any further [petitioner] needs to know where the sentencing guidelines put him." Docket # 542-3, at 15. The below exchange followed:

> GOVERNMENT: Under the plea agreement I think, I believe the total offense level would be 32, going up three points for role in the offense and down three points for acceptance of responsibility. Without taking into

6

> account any career offender provisions, the maximum amount, maximum range would be 262 months in a criminal history category of VI.
> THE COURT: And your position is that he's at a criminal history category VI?
> GOVERNMENT: I believe that the probation department found that to be so, your Honor.
> THE COURT: Okay. So he's, he's, he's at level 32, correct?
> GOVERNMENT: Correct, your Honor.
> THE COURT: Criminal history category VI?
> GOVERNMENT: Correct.
> THE COURT: So that gives a minimum —
> GOVERNMENT: That's just upon the drug quantity. And then if the probation department's determination were accepted, he was found to be a career offender, his base offense level would be set at 37, three levels reduction for acceptance of responsibility for 34, which would produce a range of 262 to 327.
> THE COURT: All right, but don't we need to know, aren't you in a position to advise — have you — I'm making some false starts here. Don't you have to give notice that you're prosecuting him as a career offender? You don't?
> GOVERNMENT: No, you don't.
> THE COURT: All right. So now if he pleads guilty to these, what is your position as to whether he's a career offender?
> GOVERNMENT: Neither myself nor Mr. Natola filed any objections to that portion of the presentence report.
> THE COURT: Which calculates that he is.
> GOVERNMENT: Yes.
> THE COURT: All right. So really we're talking 262 to 327 months under the sentencing guidelines.
> GOVERNMENT: Right. And not to speak for Mr. Natola, but in light of the agreement, I filed a joint motion for upward departure, there wasn't any reason for Mr. Natola to object to that determination.

Id. at 15-16. Later, the judge stated, "though I'm going to do the sentencing guideline calculations, I am disposed to depart upward on the grounds of the joint motion." Id. at 23. He went on:

> The base offense level in this case is 32. I am adjusting upward by three levels for Mr. Bartolomeo's role in the offense finding that he is a manager or supervisor of this, these drug transactions. I am going to adjust downward three levels for his acceptance of responsibility, taking us back to a criminal — taking us back to a total offense level of 32. He — I do find that he is a career offender and that applying the career offender guidelines his corresponding offense level is 37. As he is a career offender, his criminal history category, which otherwise would be III, is calculated at VI, which gives us a sentencing range of not less than—

7

> GOVERNMENT: He would also receive a three level decrease, your Honor, for acceptance. His total offense level would be 34, not 37.
>
> . . .
>
> THE COURT: That gives us a sentencing range as we discussed with Mr. Bartolomeo of not less than 262 nor more than 327 months.

Id. at 23–24. He then questioned petitioner about the basis for the upward departure, and petitioner admitted to intentionally striking Michaels with his car. Id. at 26.

The judge allowed the parties' joint motion for upward departure, and sentenced petitioner to 35 years' imprisonment. The statement of reasons for the judgment indicates that the court adopted the PSR's factual findings and guideline application; determined a total offense level of 32, criminal history category of VI, and imprisonment range of 262 to 327 months; and departed from the guideline range upon joint motion.[2]

## II. Legal Standard

"A petitioner in federal custody may seek post-conviction relief if, inter alia, his sentence 'was imposed in violation of the Constitution or laws of the United States' or 'is otherwise subject to collateral attack.'" Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015) (quoting 28 U.S.C. § 2255(a)). The petitioner bears the burden of proof. Id. "Collateral relief in a § 2255 proceeding is unavailable if a petitioner has procedurally defaulted on his claim by failing to raise it at trial or on direct appeal. A petitioner can avoid that bar if he can show both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Monell v. United States, No. CR 12-10187, 2017 WL 1826626, at *2 (D. Mass. May 5, 2017) (citations omitted).

---

[2] As discussed in Section III(C) infra, these reasons further confuse matters because 32 is the offense level attributable to drug quantity, but the cited criminal history category and GSR correlate to career offender status.

8

The "cause" requirement is satisfied upon a petitioner's showing that, at the time of the direct appeal, "the factual or legal basis for a claim was not reasonably available to counsel." Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). To satisfy the "actual prejudice" requirement, a petitioner must show that "there is a reasonable probability that the outcome" of the sentencing would have been different but for the alleged error. Wilder, 806 F.3d at 658 (quoting Strickler v. Greene, 527 U.S. 263, 289 (1999)).

### III.  Discussion

As a career offender, petitioner was subject to a GSR of 262 to 327 months, or about 22 to 27 years. Accordingly, he contends, he assented to a 35-year sentence understanding it to represent only about an eight-year upward departure, in exchange for avoiding a murder prosecution. Had he instead been sentenced without career offender enhancements, at a total offense level of 32 and criminal history category of III, the GSR would have been 151 to 188 months, or about 13 to 16 years.[3] From that lower threshold, he argues that he would not have agreed to a departure of nearly twenty years. In opposition, the government rejects petitioner's premise and maintains that any career offender designation was irrelevant to the ultimate disposition.

####   A.   Career Offender Predicates After Johnson II

In 2015, the Supreme Court struck down the residual clause of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague. Johnson II, 135 S.Ct. at 2557. The next year, it held that Johnson II applies retroactively to collateral challenges. Welch v. United States, 136 S.Ct. 1257, 1265 (2016). Although the subsequent Beckles decision

---

[3] Petitioner's calculation of a total offense level of 29 and corresponding GSR of 108-135 months, Docket # 540, at 4, fails to account for the three-level role enhancement.

held that Johnson II does not apply to *advisory* guideline sentences, its application to pre-Booker *mandatory* guideline sentences was left open. Beckles v. United States, 137 S.Ct. 886, 890 and 903 n.4 (2017); see United States v. Booker, 543 U.S. 220, 245 (2005) (making sentencing guidelines advisory rather than mandatory). Courts in this jurisdiction have since reasoned that petitioners sentenced under the residual clause of the mandatory, pre-Booker career offender guideline may be entitled to resentencing under Johnson II. See Moore v. United States, 871 F.3d 72, 84 (1st Cir. 2017); United States v. Roy, No. 00-cr-40013, at 15 (D. Mass. Oct. 13, 2017); Reid v. United States, 252 F. Supp. 3d 63, 68 (D. Mass. 2017).

After Johnson II, petitioner's career offender predicates — assault and battery and assault and battery on a police officer — categorically no longer qualify as crimes of violence. In Massachusetts, both offenses can be committed either intentionally or recklessly. See Commonwealth v. Eberhart, 965 N.E.2d 791, 798 n.13 (Mass. 2012). The First Circuit has found that neither form fulfills the ACCA's force clause, 18 U.S.C. § 924(e)(2)(B), the language of which is identical to its USSG analog, § 4B1.2(1). United States v. Faust, 853 F.3d 39, 58 (1st Cir. 2017) (intentional assault and battery on a police officer is indivisibly overbroad); United States v. Windley, 864 F.3d 36, 38–39 (1st Cir. 2017) (reckless assault and battery with a dangerous weapon is not a violent felony).

**B.     Cause**

From that conclusion, cause is apparent. "[A] Johnson-based claim under 28 U.S.C. § 2255 satisfies the novelty requirement for cause." United States v. Lattanzio, 232 F. Supp. 3d 220, 223 (D. Mass. 2017) ("In 1995, when Defendant here was

10

sentenced, any argument based on the rationales approved twenty years later in the Johnson cases would have been not only novel, but practically unimaginable"). See United States v. Webb, 217 F. Supp. 3d 381, 390 (D. Mass. 2016) ("the monumental shift that Johnson II created in sentencing gives the Court no pause in concluding that both petitioners satisfied the cause requirement"); Virden v. United States, No. 09-cr-10325, 2017 WL 470891, at *3 (D. Mass. Feb. 3, 2017) (Johnson II grounds created sufficient cause to excuse petitioner's default; collecting D. Mass. cases in accord).

### C. Prejudice

In the ordinary Johnson case, cause and prejudice are the twinned results of sentencing for offenses that no longer qualify as career offender predicates. See Lattanzio, 232 F. Supp. 3d at 223–24 (collecting cases rejecting procedural default in the Johnson II context). On facts far from the ordinary Johnson case, however, the same change in status here does not so readily demonstrate prejudice.

The transcript for the joint hearing on change of plea and sentencing suggests that the judge considered the drug quantity and career offender status in calculating the applicable GSR, but relied on neither in ultimately allowing the joint motion for an upward departure. The statement of reasons for the judgment only further entangles these threads, by citing the offense level attributable to the drug quantity (without career offender enhancement) but the criminal history category and GSR attributable to the career offender enhancement. The government emphasizes that such ambiguity is irrelevant because the true basis for petitioner's plea, upward departure, and ultimate sentence was avoiding murder charges, and neither the plea nor the joint motion for upward departure was at all concerned with career offender designation.

The government's position is more consistent with the record before me. Petitioner's draft plea agreement, identical to the signed final version but for new language preserving petitioner's § 2255 rights, predates the PSR and contemplates the same upward departure — indicating petitioner's assent irrespective of any career offender designation.[4] Indeed, had career offender status never entered the equation, petitioner would have faced a choice between pleading to what amounted to about a 20-year upward departure and exposing himself to a life sentence on state and/or federal murder charges. That he opted for the former under the purported, and now erroneous, impression that it represented only an eight-year departure does not establish the requisite reasonable probability of a different outcome. See Strickler, 527 U.S. at 296.

In other words, although petitioner has shown he no longer qualifies as a career offender, he has not shown that designation to be the basis for his sentence. Instead, at sentencing, the parties treated the guidelines as an afterthought to the governing motion for upward departure: first, the government noted there was no reason for the defendant to object to the PSR's career offender determination in light of the plea agreement and joint motion for upward departure. Docket # 542-3, at 16. Second, the judge stated, "though I'm going to do the sentencing guideline calculations, I am

---

[4] Petitioner points to the magistrate judge's March 24, 1997 Memorandum and Order on the Government's Motion for petitioner's detention as the earliest basis for his expectation that he would be charged as a career offender: "he has at least two convictions for violent crimes including assault and battery on a police officer. The latter offense occurred while he was on probation for a previous conviction for assault and battery." Docket # 540, at 5. But the quoted portion of the magistrate's decision does not support that view. Instead, her discussion simply informs her consideration of petitioner's dangerousness as a relevant component of the detention decision before her. See 18 U.S.C. § 3142(e); 3/24/97 Memorandum at 9 (noting the government's entitlement to move for detention in a case involving any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence). Petitioner's prior violent conduct was relevant at that stage of the proceedings only for evaluating whether his presence in the community would pose a risk to public safety. Petitioner's representations notwithstanding, the magistrate judge nowhere uses the phrase "career offender" and was clearly not contemplating future sentencing enhancements in March 1997.

12

disposed to depart upward on the grounds of the joint motion." Id. at 23. Third, the defendant confirmed that his position was set forth in the joint motion for upward departure, id. at 25, and the judge inquired "about this William Michaels thing, because that would be the basis for my upward departing." Id. at 26. Satisfied that there was a factual basis, he then imposed the 35-year term of imprisonment for which the parties had jointly moved. Although petitioner's career offender status is discussed at sentencing and muddles the statement of reasons for the judgment, it is entirely absent in the plea agreement and joint motion for upward departure that ultimately determined the sentence. Petitioner has thus not shown a reasonable probability that, but for his career offender designation, he would have received a different sentence.[5]

IV. Conclusion

For the reasons above, petitioner does not qualify as a career offender. However, because he has not shown a reasonable probability that his sentence would have been different absent that designation, his petition (Docket # 537) is DENIED.


_____June 12, 2018_____          _____/s/Rya W. Zobel_____
            DATE                                    RYA W. ZOBEL
                                        SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Petitioner's alternate theory of resentencing under 18 U.S.C. § 3582, Amendment 782 yields the same result. See Koons v. United States, No. 17-5716, slip op. at 5, 584 U.S. ___ (2018) (petitioners whose sentences were not "based on" their lowered Federal Sentencing Guidelines ranges do not qualify for sentence reductions under 18 U.S.C. §3582(c)(2), reasoning that "[w]hat matters . . . is the role that the Guidelines range played in the selection of the sentence eventually imposed—not the role that the range played in the initial calculation.")